IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL BRANDO ARRUDA            *
               Plaintiff,
v.                                    *    CIVIL ACTION NO. JFM-07-2151

L. JESSE BANE, WARDEN            *
HARFORD COUNTY GOVERNMENT
             Defendants.    *
                                *****

## **MEMORANDUM**

Plaintiff filed this civil rights action on or about August 10, 2007, seeking damages against Harford County Detention Center ("HCDC") Sheriff L. Jesse Bane and the Harford County Government ("County"), alleging that there is "no pass list" for Jewish prisoners to inform them of services, resulting in his attending Saturday Sabbath services by himself. Paper No. 1. He further complains that the HCDC will not provide kosher meals and other religious groups receive support from outside volunteers. *Id*. Plaintiff complains that he is being discriminated against by authorities. *Id*.

On November 9, 2007, defendant Bane filed a motion to dismiss, or in the alternative, motion for summary judgment. Paper No. 8. Defendant County filed a motion to dismiss on November 13, 2007. Paper No. 9. Plaintiff has filed an opposition thereto. Paper No. 11. Defendants' motions shall be granted without oral argument. *See* Local Rule 105.6. (D. Md. 2004).

Clearly, the County is named under a *respondeat superior* theory of liability for the conduct of Sheriff Bane. Bane, however, is a state, not county, employee. *See Rucker v. Harford County*, 316 Md. 275, 281 (1989). Thus, there can be no *respondeat superior* liability on the part of the County for the conduct of Sheriff Bane. Further, to establish municipal liability against the County for the deprivations at issue, plaintiff must demonstrate that the alleged conduct involves the official policy or custom of the County. *See Monell v. Dep't of Social* Services, 436 U.S. 658, 694 (1978);

*Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). In this case, plaintiff raises no such claims. Because there is no showing of *respondeat superior* or municipal government liability, the motion to dismiss filed by the County shall be granted.

According to Sheriff Bane, plaintiff is serving a 60-year term for armed robbery. On March 2, 2007, he was transferred from the Maryland Department of Public Safety and Correctional Services to HCDC pending further proceedings as to his criminal conviction. Upon arrival, plaintiff was categorized during intake procedures as a Catholic. Although it was not clear to HCDC authorities that plaintiff is in fact Jewish, to accommodate his request to practice the Judaism HCDC provided him with a prayer shawl, yarmulke, Torah, and Jewish studies guide. Paper No. 8, Exs. 1 & 2. In addition, plaintiff was provided dedicated time to pray and to observe the Jewish Sabbath.[1] *Id.*, Ex. 3 & 4. This accommodation was afforded to plaintiff based upon his request to participate in services. Plaintiff is the only Jewish individual requesting permission to participate in Jewish Sabbath Services at HCDC. *Id.*, Ex. 6.

At the time he filed this complaint plaintiff had been prescribed a cardiac diet for an existing medical condition. After he acknowledged the concerns presented to him by HCDC medical staff, plaintiff again requested a kosher diet and was provided same.[2] *Id.*, Ex. 5.

Upon a review of the materials, the court finds no violations under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc - 1 (a) or 42 U.S.C. § 1983.

---

[1] Defendant Bane states that a pass list is used to identify prisoners who are authorized by the HCDC to participate in organized activities such as group worship. Paper No. 8. The list helps HCDC personnel to identify and move prisoners from different locations at different times while still maintaining safety and security. Bane states that when there is only one individual participating in an activity, such as plaintiff's personal worship period, there is no need for a pass list.

[2] Defendants have filed supplemental materials indicating that plaintiff recently signed off his kosher diet and is receiving a regular meal. Paper No. 12.

Section 3 of the RLUIPA provides as follows:[3]

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

   (1) is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest.

Plaintiff arrived at HCDC and according to his intake records was a practicing Catholic. When he grieved to HCDC authorities that he had been practicing Judaism for several years and required religious materials, attire, and time to observe Sabbath services, he was provides with same. Indeed, by June of 2007, plaintiff wrote and thanked the HCDC chaplain for helping him to practice his religion.     Further, plaintiff was placed on a cardiac medical diet at HCDC and when he initially requested a kosher diet he was cautioned against doing so by medical personnel.  He nonetheless asked to sign off or be removed from his medical diet.  Documents indicate that an alternative vegan kosher diet was suggested because of the high sodium content in prepared meals.   Plaintiff was subsequently provided kosher meals.

HCDC has made reasonable efforts to accommodate plaintiff's Judaic religious preferences, even with his alternative religious designation.  Plaintiff has failed to meet his burden of demonstrating that his ability to practice his religion was substantially burdened or restricted.  No injury has been demonstrated.

---

[3]     Before RLUIPA, courts applied the First Amendment "deference" analysis found under *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) and *Turner v. Safley*, 482 U.S. 78 (1987).  These cases held that incarceration leads to a limitation on many rights and privileges as may be warranted by valid penological considerations, *see O'Lone*, 482 U.S. at 348, and that a prisoner's right to free exercise of his religion must give way to regulations that are "reasonably related to legitimate penological interests." *Id*. at 349; *cf. Turner*, 482 U.S. at 89.

For the aforementioned reasons, defendants' motions to dismiss or for summary judgment shall be granted   A separate order effecting the ruling made in this memorandum is being entered herewith.

Dated: December 13, 2007           ____/s/_____
                                   J. Frederick Motz
                                   United States District Judge